KOZINSKI, Circuit Judge,
dissenting:
I join my colleagues insofar as they hold that the government may use evidence obtained from a valid wiretap until “officers know or should know they are listening to conversations outside the scope of the wiretap order.” Op. at 1098. But I dissent from Part IV of the opinion where the majority remands with instructions that the district court apply this rule to Carey’s case on an open record. If, as the majority recognizes, the “record does not show” whether the federal agents reasonably believed that the conspiracies were related until after the traffic stop, id., Carey has only himself to blame. He presented no evidence contradicting Agent Melzer’s sworn declaration.
Carey can hardly be surprised by the “plain hearing” rule we adopt today: As the majority acknowledges, “Carey argued that the agents learned at some point that they were listening to an unrelated conspiracy,” id. at 1099, but he failed to identify a specific point. Instead, Carey relied only on the fact that the officers listened for seven days to the conversations on the phone.
But the length of time the officers listened is hardly dispositive of whether they realized or should have realized they were listening to a different conspiracy than the one covered by the warrant. That depends on what the officers heard and when they heard it. While agents eventually realized that Escamilla wasn’t using the phone, the wiretap order also permitted them to intercept conversations of Escamilla’s unknown co-conspirators. The agents could have reasonably believed that Escamilla had passed the phone to a confederate. FBI Agent Melzer declared under oath that he “thought the callers and calls might still be affiliated with [the] known targets or part of the criminal activity [he] was investigating.” He claims he didn’t definitively learn until after the traffic stop that the calls were unrelated to the Es-camilla conspiracy. By expressly refusing to challenge the Melzer declaration, Carey conceded the point.
The majority is mistaken in saying that “Carey’s primary argument in the district court was broader than the rule we adopt today.” Id. Here’s what Carey’s lawyer argued in his motion in the district court:
Mr. Carey concedes the FBI reasonably believed the intercepted calls from T-14 could be related to the Escamilla conspiracy, at the beginning of interception. At some point, however, during the daily interceptions, with the number of calls mounting with new interceptees, it became less reasonable for the FBI to continue to believe this new conspiracy was related to Escamilla. As the Court is well aware,' the FBI’s investigation into the Escamilla conspiracy was vast and extensive. At some' point, between March 10 to March 17, 2010, the FBI had to have realized that th[e] T-14 interceptions were part of a separate conspiracy - separate from, and unrelated to, the Escamilla conspiracy for which the wiretap was authorized.
When they knew, they should have stopped, worked with other law enforcement agencies investigating the Carey conspiracy and proceeded with a proper, traditional investigation. Instead, the *1101 FBI, knowing at some point that they were no longer investigating Escamilla and his coconspirators, continued to monitor T-14 under the auspices and authority of the Escamilla wiretap.
And here’s what Carey’s lawyer said to the district court during oral argument:
It is our position that at some point along that week as the calls were coming in, as the interceptees were being intercepted and they were not connected to the Escamilla extensive investigation, that the reasonableness of that agent to believe that was somehow related to Es-camilla diminished. It diminished per call per day, all the way to the end of the week that where it is unreasonable then - where it started out being reasonable by the end of the week [sic].
Carey never identified a specific point when it became unreasonable for the agents to believe that they were still listening to the Escamilla conspiracy. Carey was given full discovery and thus had access to the recordings and transcripts of the intercepted phone conversations. If he believed that the agents should have known prior to the traffic stop that this was a different conspiracy, he could have pointed this out to the district court. Instead, he offered no evidence and explicitly declined to dispute the accuracy of Mel-zer’s statement:
The Court: From your standpoint it is fair to say that you don’t dispute the accuracy that Mr. Melzer set forth in his declaration? Your argument is that, well, there are things that are not in his declaration that you believe would be relevant facts, but that as far as a - there is no disagreement with his declaration.
[Carey’s lawyer]: That is an accurate statement.
The Court: So in deciding the motion, there is no objection to the Court relying on facts set forth in this deck-ration as true and as part of the record.
[Carey’s lawyer]: I think that is a fair statement.
The majority is also mistaken in its oblique suggestion that Carey was seeking to obtain additional evidence or requested an evidentiary hearing “to take evidence about Melzer’s level of knowledge regarding the relationship between Escamilla and the phone calls.” Id. Here’s what actually happened in the district court:
[The Court]: Is there any evidentiary - any witnesses in your view that would be necessary for an evidentiary hearing? It seems like it is a legal matter to me.
[Carey’s lawyer]: Except for the Franks hearing - outside of the Franks hearing, I don’t see a need for an eviden-tiary hearing, other than perhaps Agent Crawl (phonetic) from the DEA was conducting the investigation while the FBI was conducting the wiretap. Outside of that I don’t see any other relevant evidentiary purposes.
Carey thus expressly disowned the purposes the majority generously attributes to him. As for the Franks hearing, the majority recognizes that it’s inapplicable to this situation. Id. at 1099 nn.6&7.
This isn’t a case where we’ve announced an unforeseen rule, surprising a defendant who didn’t have the opportunity to argue about its.application in the district court. Carey’s problem is that he failed to demonstrate in the district court that any evidence should be suppressed under the rule he advocated. I would affirm the district court’s judgment rather than give Carey a mulligan.